[No. 2976.  Oct. 13, 1926.]

STATE v. GAUNT. ·

[250 Pac. 634.]

#### SYLLABUS BY THE COURT

·Evidence set forth **held** to support conviction for embezzlement, under Laws 1919, ch. 120, § 13.

Appeal from District Court, Valencia County; Owen, Judge.

John R. Gaunt was convicted of embezzlement, and he appeals. Affirmed.

R. P. Barnes, of Albuquerque, for appellant.
John W. Armstrong, Atty. Gen., and James N. Bujac, Asst. Atty. Gen., for the State.

#### OPINION OF THE COURT

WATSON, J.  John R. Gaunt, charged, under Laws 1919, c. 120, § 13, with embezzling $25,196.75 of the funds of the Reserve State Bank, was convicted, and appeals.

Appellant was, during the time in question, cashier of the Reserve State Bank. $30,000 of bonds of school district No. 53 of Catron county had been issued and intrusted to said bank for sale. The negotiations for

---

[1] 17CJ p. 255 n. 55; 20CJ p. 486 n. 60.

their sale were carried on by the appellant. The sale was effected February 2, 1922, to the Bankers' Trust Company of Denver, which, pursuant to instructions from appellant, gave its check, in the sum above mentioned, being the proceeds of the sale of the bonds, to the First National Bank of Denver, for the credit of the State National Bank of Albuquerque, for the Reserve State Bank; and, on that date, notified appellant by wire, that it had done so. On February 4, the State National Bank of Albuquerque credited the Reserve State Bank with said sum, and notified said bank by letter. The credit also appeared on the regular monthly statement sent by the State National Bank to the Reserve State Bank. The sum was never debited on the books of the Reserve State Bank to the State National Bank of Albuquerque, and was never credited to the treasurer of Catron County. The State National was a regular correspondent of the Reserve State, and daily transactions of deposit and withdrawal took place during the time in question. On February 4, after the credit aforesaid, the books of the State National showed a credit in favor of the Reserve State of $52,571.75. That balance varied, up and down, between that date and April 3, 1923, when the Reserve State suspended business, at which time there remained a balance of $1,770. Appellant, as cashier, and t w o assistant cashiers had authority to draw and did customarily draw upon this account. One of the assistant cashiers testified; the other did not. He who testified had charge of and kept the general ledger in which appeared the account with the State National. He testified that he never had any knowledge of the credit in question, and that he did not attempt reconciliation of his account with the statements received, from time to time, from the State National. In cross-examination of this witness, by appellant's counsel, some use was had, and references were made to the draft register, and to the canceled and returned drafts. The former was introduced in evidence, but no part of it appears in the transcript. The latter were not introduced in evidence. So we are in the dark as to whether the particular

drafts or checks by means of which the money in question was withdrawn appear among those exhibited to the witness, or whether they are listed in the draft register. The books of the State National do not disclose any one withdrawal in that exact or the approximate amount.

It was the state's theory that appellant possessed himself of and appropriated the said amount. This theory is supported by the admission of the appellant in a letter to N. B. Smith, the assistant cashier, who testified, written on May 11, 1922, from El Paso, Tex. The material part of the letter follows:

"I have the proceeds from the sale of the district 53 bonds, $26,436.62. On account of the trouble existing down there, I am placing this money in escrow here, until such time as they agree how the money is to be spent. During this time, I am not going to let them know that the sale has been made, unless an injunction is filed. Out of the above amount, I am to have credited to my account $902.50, which takes care of the interest due on coupons, as per the attached receipt, and for which I remitted, so as not to impair the above amount."

In connection with the letter, it may be observed that on March 29th, preceding, the balance of the Reserve State at the State National fell below the amount in question, never again equaled it, and, on May 11, when appellant wrote the letter, it was under $4,000.

It was the theory of the defense that the amount was drawn out and used in the regular course of business, from time to time, in meeting the obligations of the bank. Counsel for appellant places great reliance upon an affirmative response to this suggestive question put to the witness Smith, on cross-examination:

"Then, Mr. Smith, if this credit of twenty-five thousand odd dollars was given by the State National Bank to the Reserve State Bank, so far as the banking records show, it was absorbed by the business of the Reserve State Bank until the time of the closing of the Reserve Bank, leaving a small balance there at that time. Is that correct?"

Under further examination, however—redirect, recross, and by the court—this witness made it plain that

he was utterly unable, from the books of the Reserve State, to explain or show the absorption of the amount in question, or any part of it, and that he meant only to say that it had disappeared.

Counsel for appellant contends that the evidence set forth does not justify the verdict, that the trial court should have directed a verdict for appellant, and that he should have granted a new trial. It is admitted that, under the well-established rule, the judgment is not to be disturbed if the verdict is supported by substantial evidence. It seems to us that the case made by the state comes well within the rule.

The judgment must therefore be affirmed, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.